**24-13640-C**

# United States Court of Appeals

*for the*

# Eleventh Circuit

———————

UPSIDE FOODS, INC.,

*Plaintiff/Appellant,*

– v. –

COMMISSIONER OF THE FLORIDA DEPARTMENT OF AGRICULTURE
AND CONSUMER SERVICES WILTON SIMPSON, *et. al.*,

*Defendants/Appellees.*

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
CASE NO: 4:24-cv-00316-MW-MAF
(Hon. Mark E. Walker)

## REPLY BRIEF OF APPELLANT

Paul M. Sherman (VA 73410) †
Suranjan Sen (TN 038830)
Samuel B. Gedge (VA 80387)
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, Virginia  22203
(703) 682-9320 (Telephone)
(703) 682-9321 (Facsimile)
psherman@ij.org
ssen@ij.org
sgedge@ij.org

Ari Bargil (FL 71454)
INSTITUTE FOR JUSTICE
2 South Biscayne Boulevard, Suite 3180
Miami, Florida 33131
(305) 721-1600 (Telephone)
(305) 721-1601 (Facsimile)
abargil@ij.org

† *Lead Counsel*
*Counsel for Plaintiff/Appellant*

*Counsel for Plaintiff/Appellant*

*UPSIDE Foods, Inc. v. Commissioner of the FL Dept. of Agriculture and Consumer Services Wilton Simpson, et al.*, Record No. 24-13640-C

## AMENDED CERTIFICATE OF INTERESTED PERSONS

**Chief U.S. District Judge, U.S. District Court, Northern District of Florida, Tallahassee Division:**

1. The Honorable Mark E. Walker, Chief U.S. District Court

**Appellant:**

1. UPSIDE Foods, Inc.

**Appellant's Counsel:**

2. Bargil, Ari S.

3. Gedge, Samuel B.

4. Institute for Justice

5. Sen, Suranjan

6. Sherman, Paul

**Commissioner of the Florida Department of Agriculture and Consumer Services Appellee:**

7. Simpson, Wilton

**Appellee Wilton Simpson's Counsel:**

8. Banks, Ashlyn R.

9. Florida Department of Agriculture and Consumer Services

10. Garner, Sean T.

11. Harle, Denise M.

*UPSIDE Foods, Inc. v. Commissioner of the FL Dept. of Agriculture and Consumer Services Wilton Simpson, et al.*, Record No. 24-13640-C

12. Nordby, Daniel E.

13. Polston, Ricky L.

14. Reardon, Kassandra S.

15. Shaw, Darby G.

16. Shutts & Bowen LLP

**State Attorney Appellees:**

17. Bain, Andrew A.

18. Bartlett, Bruce L.

19. Campbell, Jack

20. Rundle, Katherine Fernandez

**State Attorney Appellees' Counsel:**

\*  ~~Bell, Daniel W~~. – Appearance withdrawn.

21. Costello, David M.

22. Florida Attorney General Office

\*  ~~Moody, Ashley~~ – No longer Florida Attorney General

\*  ~~O'Hickey, Bridget K.~~ – Appearance withdrawn.

23. Stafford, III, William H.

24. Swartz, Foster H.

25. ^ Uthmeier, James – new Florida Attorney General

*UPSIDE Foods, Inc. v. Commissioner of the FL Dept. of Agriculture and Consumer Services Wilton Simpson, et al.*, Record No. 24-13640-C

\*      ~~Whitaker, Henry C.~~ – Appearance withdrawn.

* = No longer an interested person on the case.

^ = Newly added interested person to the case.

*UPSIDE Foods, Inc. v. Commissioner of the FL Dept. of Agriculture and Consumer Services Wilton Simpson, et al.*, Record No. 24-13640-C

## CORPORATE DISCLOSURE STATEMENT

I hereby certify that Plaintiff/Appellant UPSIDE Foods, Inc., has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

Dated May 7, 2025.

/s/ Paul M. Sherman
Counsel for Plaintiff-Appellant

# TABLE OF CONTENTS

**Page**

Amended Certificate of Interested Parties and Corporate Disclosure Statement.................................................................................................. C-1

TABLE OF CONTENTS ............................................................................ i

TABLE OF CITATIONS ........................................................................... ii

ARGUMENT .............................................................................................. 1

    I.    UPSIDE has established a likelihood of success on the merits of its preemption claims ................................................ 1

        A. The PPIA preempts Florida's ban on cultivated poultry products ............................................................................. 2

        B. The government's alternative arguments for affirming the decision below are meritless ....................................... 7

            1. UPSIDE has a cause of action ...................................... 8

            2. Private litigants may sue to enjoin state laws that are preempted under the PPIA........................................... 16

            3. The PPIA applies to UPSIDE's cultivated chicken product ........................................................................ 21

    II.    This appeal Continues to Present a Live Controversy......... 25

CONCLUSION ......................................................................................... 28

CERTIFICATE OF COMPLIANCE ....................................................... 30

CERTIFICATE OF SERVICE................................................................. 31

i

# TABLE OF CITATIONS

Page(s)

## Cases

*Armour & Co v. Ball*,
   468 F.2d 76 (6th Cir. 1972) ............................................................ 3

*Armstrong v. Exceptional Child Ctr., Inc.*,
   575 U.S. 320 (2015) .................................................. 9, 13, 15, 18, 21

*Association des Éleveurs de Canards et d'Oies du Québec v. Becerra*,
   870 F.3d 1140 (9th Cir. 2017) ..................................................... 17, 21

*Ass'n des Éleveurs de Canards et d'Oies du Québec v. Bonta*,
   33 F.4th 1107 (9th Cir. 2022)........................................................ 16

*Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*,
   928 F.3d 670 (7th Cir. 2019) ........................................................ 27

*Bell Atl. Co. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................... 8

*Blessing v. Freestone*,
   520 U.S. 329 (1997) .................................................................... 11

*Bowles v. DeSantis*,
   934 F.3d 1230 (11th Cir. 2019) ..................................... 11, 12, 13, 14

*Car Carriers, Inc. v. Ford Motor Co.*,
   745 F.2d 1101 (7th Cir. 1984) ........................................................ 8

*Collier v. Dickinson*,
   477 F.3d 1306 (11th Cir. 2007) ................................................. 14, 15

ii

*Del Real, LLC v. Harris*,
    966 F. Supp. 2d 1047 (E.D. Cal. 2013),
    *aff'd*, 636 F. App'x 956 (9th Cir. 2016) ..................................... 18, 21

*Ex parte Young*,
    209 U.S. 123 (1908) ......................................................................... 9

*\*Grocery Manufacturers Ass'n v. Sorrell*,
    102 F. Supp. 3d 583 (D. Vt. 2015) ................................................... 3

*House of Raeford Farms, Inc. v. SOMMA Food Grp., LLC*,
    No. 05-22-01231-CV, 2024 WL 396609 (Tex. App.
    Feb. 2, 2024) ............................................................................ 19, 20

*Johnson v. 3M Co.*,
    55 F.4th 1304 (11th Cir. 2022) ................................................ 26, 28

*Littlejohn v. Sch. Bd. of Leon Cnty.*,
    132 F.4th 1232 (11th Cir. 2025) ..................................................... 11

*Monster Beverage Corp. v. Herrera*,
    No. 13-cv-786, 2013 WL 4573959 (C.D. Cal. Aug. 22, 2013) ... 18, 21

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
    584 U.S. 453 (2018) ......................................................... 10, 14, 19

*Nat'l Broiler Council v. Voss*,
    44 F.3d 740 (9th Cir. 1994) ................................................ 17, 18, 21

*\*Nat'l Meat Ass'n v. Harris*,
    565 U.S. 452 (2012) ................................................................. 1, 2, 4

*New Orleans Ass'n of Cemetery Tour Guides & Cos. v. New Orleans
Archdiocesan Cemeteries*,
    56 F.4th 1026 (5th Cir. 2023) ........................................................ 27

*N.Y. State Rest. Ass'n v. N.Y.C. Bd. of Health*,
    509 F. Supp. 2d 351 (S.D.N.Y. 2007) ....................................... 18, 21

*POM Wonderful LLC v. Coca-Cola Co.*,
  573 U.S. 102 (2014) ........................................................ 18, 19, 20

*Randall v. Scott*,
  610 F.3d 701 (11th Cir. 2010) ............................................... 8

*Sanderson Farms, Inc. v. Tyson Foods, Inc.*,
  549 F. Supp. 2d 708 (D. Md. 2008) ...................................... 19

*Schwab v. Crosby*,
  451 F.3d 1308 (11th Cir. 2006) ........................................... 11

*State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*,
  120 F.4th 59 (2d Cir. 2024) ................................................ 27

*Util. Air Regul. Grp. v. EPA*,
  573 U.S. 302 (2014) ............................................................ 7

*Webb v. Trader Joe's Co.*,
  418 F. Supp. 3d 524 (S.D. Cal. 2019),
  *aff'd*, 999 F.3d 1196 (9th Cir. 2021) .................................. 19

*West Virginia v. EPA*,
  597 U.S. 697 (2022) ............................................................ 7

## Constitutional Provisions

Supremacy Clause, Art. VI, cl. 2 .................................... 17, 21, 26

## Statutes, Codes, Rules, and Bill

Poultry Products Inspection Act,
21 U.S.C. §§ 451–73 .......................................... 1-6, 8, 12-23, 28
21 U.S.C. § 451 ................................................................ 12
21 U.S.C. § 452 ................................................................ 12
21 U.S.C. § 453(f) ........................................................ 22, 23
21 U.S.C. § 467c ........................................................... 17, 19

iv

21 U.S.C. § 467e........................................................................12-14, 17, 19

Food, Drug, and Cosmetic Act,
21 U.S.C. §§ 301-392..................................................................18, 20, 21

21 U.S.C. § 610(a) .................................................................................5

21 U.S.C. § 641 ...................................................................................5, 6

Federal Meat Inspection Act,
21 U.S.C. § 601(j) ...............................................................................3-6, 8

42 U.S.C. § 1983..................................................................9, 10, 14, 15, 25

42 U.S.C. § 1988.....................................................................................9

9 C.F.R. § 381.15(c) ...............................................................................24

27 C.F.R. § 5.143(a) ...............................................................................23

27 C.F.R. § 5.143(c) ...............................................................................23

27 C.F.R. Table 1 ...................................................................................23

Fed. R. Civ. P. 1 ....................................................................................27

Fed. R. Civ. P. 8(a)(2) ..............................................................................8

Fed. R. Civ. P. 8(e) ................................................................................27

S.B. 1084, § 50, 2024 Leg., Reg. Sess. (Fla. 2024).....................1, 2, 6, 7, 9

## Other Authorities

Brief of the United States as *Amicus Curiae,*
*Association des Éleveurs de Canards et d'Oies du Québec v. Becerra,*
        2018 WL 6389601 (Dec. 4, 2018) ...............................................16, 17

*Precatory*, Merriam-Webster,
    https://www.merriam-webster.com/dictionary/precatory (last
    visited Dec. 2, 2024) .......................................................................... 14

# ARGUMENT

As explained in Section I, the government has not meaningfully engaged with Appellant UPSIDE Food's argument or the precedents showing that UPSIDE has established a likelihood of success on the merits, and the government's alternative arguments for affirming the decision below are meritless. As explained in Section II, this appeal continues to present a live controversy because UPSIDE's filing of an amended complaint did nothing to alter the basic nature of its grievance with the state of Florida, which is that UPSIDE is unlawfully subject to a state law that is preempted under the Poultry Product Inspection Act. This Court should reverse the decision below.

## I. UPSIDE has established a likelihood of success on the merits of its preemption claims.

As explained in Appellant UPSIDE Food's opening brief, Florida's SB 1084 is expressly preempted by the Poultry Products Inspection Act (PPIA), the broad provisions of which "prevent[] a State from imposing any additional or different—*even if non-conflicting*—requirements that fall within the scope of the [PPIA]" and pertain to the ingredients in poultry products or the premises, facilities, or operations of the official

1

establishments in which they are produced. *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 459–60 (2012) (emphasis added).

SB 1084 fails this test. Acting under the PPIA, the federal government has authorized UPSIDE to cultivate chicken cells and include those cultivated chicken cells as ingredients in finished poultry products under the same standards that apply to any other poultry ingredient. Yet Florida's SB 1084 expressly forbids what the federal government allows: It prohibits the manufacture, distribution, or sale in Florida of any poultry product that is produced through the cultivation of poultry cells or that includes cultivated poultry cells as ingredients.

In Section A, UPSIDE will explain why the government's attempt to overcome this reasoning fails. In Section B, UPSIDE will explain why the government's other arguments for affirming the ruling below also fail.

## A.    The PPIA preempts Florida's ban on cultivated poultry products.

In its responsive briefs, the government repeats the fundamental mistake made by the district court below, which was to assume that the PPIA's regime of express statutory preemption requires some direct conflict between state and federal requirements. But as UPSIDE

explained in its opening brief, the PPIA—and the analogous preemption provision of the Federal Meat Inspection Act (FMIA)—preempts even nonconflicting state requirements regarding the permissible ingredients in poultry products or the premises, facilities, or operations of the official establishments in which they are produced. Opening Br. at 33–40.[1]

That much is evident from the Sixth Circuit's decision in *Armour & Co. v. Ball*, 468 F.2d 76 (6th Cir. 1972), and the District of Vermont's more recent decision in *Grocery Manufacturers Ass'n v. Sorrell*, 102 F. Supp. 3d 583 (D. Vt. 2015), both of which found nonconflicting state laws preempted under either the PPIA or FMIA because they imposed requirements that added to federal requirements. Remarkably, although UPSIDE discussed these cases at length in its opening brief and identified them as two of the three cases on which it chiefly relied,

---

[1] On April 25, the district court granted in part and denied in part the government's motions to dismiss UPSIDE's amended complaint, dismissing UPSIDE's preemption claims but not dismissing UPSIDE's claim under the Dormant Commerce Clause. Doc. 85. The district court's ruling on the motion to dismiss does not substantively add to the arguments presented by the government on appeal here.

3

neither of the government's briefs so much as cites, let alone distinguishes these cases.

Instead, the government's primary response is to point to cases that upheld state laws that prohibited the sale of foie gras and horse meat. State Attorneys' Br. at 55–59; Simpson Br. at 16–21. These arguments for the most part simply reiterate the decision of the district court below and are thoroughly addressed in UPSIDE's opening brief. UPSIDE will not repeat at length why those cases are inapposite here, but, as explained in that brief, the basic reason is that those cases involved state laws that turned on the regulation of animals while they were alive out outside of the "official establishments" over which the USDA has jurisdiction. Opening Br. at 46–50.[2]

---

[2] The government also argues in passing that Florida's law cannot violate the "premises, facilities, or operations" provision of the PPIA as applied to UPSIDE because UPSIDE is not located in Florida. State Attorney's Br. at 64. That argument is expressly foreclosed by the Supreme Court's ruling in *National Meat Association v. Harris*. 565 U.S. 452, 464 (2012) ("[I]f the sales ban were to avoid the FMIA's preemption clause, then any State could impose any regulation on slaughterhouses just by framing it as a ban on the sale of meat produced in whatever way the State disapproved. That would make a mockery of the FMIA's preemption provision.").

Here again, the government's response to UPSIDE's argument is remarkably scant, confined largely to two footnotes in the State Attorneys' reply brief. In response to UPSIDE's argument that California's foie gras ban dealt with animal husbandry practices that occur outside of official establishments—and, hence, outside the preemptive scope of the PPIA—the government simply repeats the district court's assertion that "this distinction is beside the point." State Attorneys' Br. at 57 n.26. Why? The government doesn't say.

The government's response to UPSIDE's argument distinguishing a Texas case about horse meat also fails. That case, too, concerned the treatment of animals while they were alive—specifically, it prohibited them from being slaughtered for human consumption. Because the slaughter of horses for human consumption may occur only at USDA-regulated official establishments,[3] Texas's law necessarily prevented horse meat from coming within the ambit of the USDA's authority and the FMIA's preemption provisions.[4] Thus no aspect of Texas's ban on

_____

[3] *See* 21 U.S.C. § 610(a) (prohibiting the slaughter of horses to produce any articles "capable of use as human food . . . except in compliance with the requirements of this chapter").

[4] To the extent Texas's law permitted the continued slaughter of horse

5

the slaughter of horse for human consumption reached into and affected the operation of "official establishments" regulated under the FMIA. The government argues that, similarly, SB 1084 operates to prevent cultivated chicken cells from coming within the USDA's regulatory ambit. State Attorneys' Br. at 59–60. But this argument fails because those cells came within the USDA's regulatory ambit the moment the chicken from which they were extracted was slaughtered. Simply put, once a chicken is slaughtered, the processing of its parts into human foods is a matter reserved to the federal government under the PPIA.[5]

In a final unpersuasive attempt to escape the PPIA's broad preemptive sweep, the government invokes the "major questions doctrine." State Attorneys' Br. at 60–61. The government cites no case applying that doctrine in circumstances remotely similar to this case. That is unsurprising, because the major questions doctrine applies to

---

for use as animal food, that slaughter occurred at facilities that were not subject to USDA jurisdiction. *See* 21 U.S.C. § 641.

[5] For this same reason, the government's argument that UPSIDE's position would prevent a state of vegetarians from outlawing the slaughter of poultry (or the state of Florida from outlawing the slaughter of the state bird) is misplaced. Like the horsemeat cases, laws that prohibit the slaughter of animals prevent them from coming within the USDA's jurisdiction.

"extraordinary cases," *West Virginia v. EPA*, 597 U.S. 697, 721 (2022), where an agency's interpretation of federal law "would bring about an enormous and transformative expansion in [the agency's] regulatory authority." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014). That doctrine has no application to the USDA's decades-long maintenance of uniform requirements regarding poultry products.

In short, for the reasons stated in UPSIDE's opening brief, UPSIDE has established a likelihood of success on the merits. The district court's contrary ruling was error.

### B. The government's alternative arguments for affirming the decision below are meritless.

In Section 1, UPSIDE will explain why UPSIDE has a cause of action for challenging SB 1084. In Section 2, UPSIDE will refute the government's claim that only the United States government may challenge state laws that are preempted under the PPIA. Finally, in Section 3, UPSIDE will explain why the PPIA's broad definition on "poultry product" covers UPSIDE's cultivated chicken product.

### 1. UPSIDE has a cause of action.

The government devotes the largest part of its analysis to arguments for why UPSIDE has not properly alleged a cause of action.

Stepping back for a moment, it is worth noting that federal courts have routinely heard express preemption cases under the PPIA and the FMIA. And under the Federal Rules' pleading requirements, UPSIDE's initial complaint was sufficient to raise such a claim so long as it included "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This liberal standard did not require that UPSIDE include any particular magic words in its complaint—this Circuit has held that the standard is satisfied so long as the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under *some* viable legal theory." *Randall v. Scott*, 610 F.3d 701, 707 n.2 (11th Cir. 2010) (emphasis added).[6]

UPSIDE's initial complaint satisfied that standard. No one doubts that the State of Florida was immediately put on actual notice that it was being called upon to defend SB 1084 from claims of express federal

---

[6] *See also Bell Atl. Co. v. Twombly*, 550 U.S. 544, 562 (2007) ("a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory" (emphasis and omission in original) (quoting with approval *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

preemption. Whether those claims are better understood as arising under the courts' inherent equitable powers or under Section 1983 may one day be relevant to the question of whether UPSIDE is entitled to recover attorneys' fees under Section 1988, but it has no bearing on whether UPSIDE properly raised a cause of action in the court below. And UPSIDE has done so under both the court's inherent equitable power and Section 1983.

The inherent equitable power of federal courts to enjoin preempted state regulatory action is well established. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015) ("[A]s [the Supreme Court has] long recognized, if an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted."); *see also Ex parte Young*, 209 U.S. 123 (1908). Even the government does not seriously dispute this principle, arguing instead that UPSIDE's cause of action in equity is foreclosed by statute (which, as explained in Section B, *infra*, is wrong).

Although a finding that UPSIDE has a claim in equity is enough to resolve the government's objections, UPSIDE also has a cause of

action under Section 1983. As the district court noted below, whether UPSIDE has properly pleaded a cause of action under Section 1983 involves answering two questions. First, "does the PPIA's express preemption provision create an individual right that is enforceable under section 1983, and second, has Congress foreclosed Plaintiff's cause of action for express preemption under section 1983?" Doc. 40 at 13 n.7. UPSIDE's claims satisfy both requirements.

First, the PPIA's express preemption provisions create individually enforceable rights. As the Supreme Court explained in *Murphy v. National Collegiate Athletic Ass'n*, express preemption provisions like the PPIA's "confer[] on private entities . . . a federal right to engage in certain conduct subject only to certain (federal) constraints." 584 U.S. 453, 478–79 (2018). The government objects that this portion of Justice Alito's majority opinion is in dicta. But even if that is correct—and there is every reason to doubt that a discussion so fundamental to the Court's analysis could qualify as dicta—this Court has long recognized that "there is dicta and then there is dicta, and then there is Supreme Court dicta," which "is not something to be lightly cast aside." *Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006) (citation

10

omitted). That is particularly true when, as here, the alleged dicta is not the "subordinate clause, negative pregnant, devoid-of-analysis, throw-away kind of dicta," but rather the "well thought out, thoroughly reasoned, and carefully articulated analysis by the Supreme Court." *Littlejohn v. Sch. Bd. of Leon Cnty.*, 132 F.4th 1232, 1241–42 (11th Cir. 2025). This Court "give[s] that reasoning and its clear implications substantial weight." *Id.* at 1242.

Besides that, though, UPSIDE's right to be regulated only in the manner provided by the PPIA satisfies the three-factor test set forth in *Blessing v. Freestone*, 520 U.S. 329 (1997), for determining whether a federal law unambiguously provides this right. *See Bowles v. DeSantis*, 934 F.3d 1230, 1239–40 (11th Cir. 2019) (discussing the *Blessing* factors). Those three factors are: (1) whether Congress "intended that the provision in question benefit the plaintiff," (2) whether "the right assertedly protected by the statute is . . . so vague and amorphous that its enforcement would strain judicial competence," and (3) whether the statute "unambiguously impose[s] a binding obligation on the states." *Id.* at 1239–40.

11

First, poultry producers are one of the intended beneficiaries of the PPIA in general and the PPIA's express preemption provisions specifically. The PPIA itself declares in its statement of findings that, "[u]nwholesome, adulterated, or misbranded poultry products . . . destroy markets for wholesome, not adulterated, and properly labeled and packaged poultry products, and result in sundry losses to *poultry producers and processors of poultry and poultry products*." 21 U.S.C. § 451 (emphasis added). Congress sought to prevent "the burdening of such commerce." 21 U.S.C. § 452. And one of the ways it sought to achieve this end was by creating a uniform set of requirements "with respect to premises, facilities and operations of . . . official establishment[s]" like UPSIDE's in which poultry products are manufactured and the "[m]arking, labeling, packaging, [and] ingredient requirements" to which those products are subject. 21 U.S.C. § 467e.[7]

---

[7] The government suggests that this clear legislative statement regarding benefits to poultry producers is insufficient to demonstrate that poultry producers are one of the intended beneficiaries of the PPIA. State Attorneys' Br. at 42–43. The government provides no analysis for why this specific references to harms to poultry processors and the desirability of ameliorating that harm through federal legislation is insufficient to show that poultry processors are one of the intended beneficiaries of the PPIA. But Congress's intent is best understood from the plain language it employed, which unambiguously identified poultry

12

Second, the right created by the PPIA's preemption provision is not "so vague and amorphous that its enforcement would strain judicial competence." *Bowles*, 934 F.3d at 1239–40. Rather, the preemption requirements prohibit any state requirements "in addition to, or different than," those imposed under the PPIA. 21 U.S.C. § 467e. This total prohibition on additional or different requirements thus bears no resemblance to the sort of value-laden statutory language that courts have found to be judicially unadministrable. *See, e.g.*, *Armstrong*, 575 U.S. at 328 (holding that requirements in the Medicaid Act that states provide Medicaid reimbursement plans "consistent with efficiency, economy, and quality of care," while "safeguard[ing] against unnecessary utilization of . . . care and services" was not judicially administrable).

Third and finally, the PPIA's express preemption provision is "couched in mandatory, rather than precatory, terms." *Bowles*, 934 F.3d at 1245. Under both the "premises, facilities and operations" clause and the "ingredients" clause, requirements that differ from or add to federal

processors as among the groups to be benefited by uniform enforcement of the PPIA.

13

law "may not be imposed by any State." 21 U.S.C. § 467e. This is not Congress "expressing a wish." *See Precatory*, Merriam-Webster, https://www.merriam-webster.com/dictionary/precatory (last visited Dec. 2, 2024). It is Congress establishing "a federal right to engage in certain conduct subject only to certain (federal) constraints." *Murphy*, 584 U.S. at 478–79. And where Congress has established such a right, that right is presumptively enforceable under Section 1983. *See Collier v. Dickinson*, 477 F.3d 1306, 1310 (11th Cir. 2007) ("If all three conditions are satisfied, there exists a rebuttable presumption that the statute is enforceable under Section 1983.").

Because UPSIDE's federal preemption claims are grounded both in this Court's inherent equitable power and in Section 1983, the government may only escape those claims if it shows that Congress intended to foreclose both equitable relief and relief under Section 1983. But the government cannot do so here.

Courts do not lightly conclude that Congress has displaced either equitable or Section 1983 remedies. The mere possibility of pursuing relief through other means is not enough. Instead, Courts will find that Congress has foreclosed equitable relief or relief under Section 1983

14

only where Congress has created an alternative avenue of relief that it intends to be both comprehensive and exclusive. *See Armstrong*, 575 U.S. at 328; *Collier*, 477 F.3d at 1311. For UPSIDE's equitable claims, the existence of alternative enforcement mechanisms is most likely to foreclose equitable relief when the statute is "judicially unadministrable," *Armstrong*, 575 U.S. at 328, which, as discussed, the PPIA is not. For UPSIDE's Section 1983 claims the standard is even higher: "[T]o support the conclusion that Section 1983 relief is precluded, the scheme set forth by Congress must be so detailed, complex, or comprehensive, such that it is *nonsensical* to hold that Congress intended Section 1983 relief to be available." *Collier*, 477 F.3d at 1311 (emphasis added).

The government has not met these high bars. Indeed, the government points to no comprehensive enforcement scheme at all, besides the possibility of UPSIDE complaining to the USDA and hoping that it pursues action against the state, which it is under no obligation to do. But that is no remedy at all, let alone the sort of comprehensive scheme required to foreclose UPSIDE's claims.

15

### 2. Private litigants may sue to enjoin state laws that are preempted under the PPIA

Next, the government argues that UPSIDE cannot succeed on the merits of its claim because only the United States government may challenge state laws that are preempted by the PPIA. This conclusion would come as a surprise to the Ninth Circuit, which has entertained lawsuits brought by private parties challenging state laws allegedly preempted under the PPIA for decades. *See, e.g.*, *Nat'l Broiler Council v. Voss*, 44 F.3d 740 (9th Cir. 1994); *Ass'n des Éleveurs de Canards et d'Oies du Québec v. Bonta*, 33 F.4th 1107 (9th Cir. 2022). Under the government's theory, California could have avoided more than a decade of litigation over its foie gras ban had it only figured out the same trick. It would presumably also come as a surprise to the United States government, which filed an amicus brief in the *Canards* litigation but notably did *not* argue that only the United States government may bring lawsuits alleging that a state law is preempted under the PPIA. *See* Brief of the United States as *Amicus Curiae, Association des Eleveurs de Canards et d'Oies du Quebec v. Becerra*, 2018 WL 6389601 (Dec. 4, 2018).

16

In support of this unlikely conclusion, the government points to 21 U.S.C. § 467c, which provides that "[a]ll proceedings for the enforcement or to restrain violations of this chapter shall be by and in the name of the United States." But this provision is not the silver bullet the government claims because a state's enactment of a law that is preempted under § 467e of the PPIA is not a "violation" of the PPIA in the relevant sense of that term.

Read in context, § 467c is better understood to prohibit private lawsuits that allege a violation of the PPIA's substantive provisions. Tyson cannot sue Perdue alleging that the latter failed to comply with some regulatory provision of the PPIA. But UPSIDE is not suing a competitor. Nor is it suing a state on the grounds that there was some action the state was required to take under the PPIA that the state failed to perform properly. Instead, it is suing to enjoin the threatened enforcement of a state law that violates the Supremacy Clause. And federal courts have repeatedly heard such cases under both the PPIA and the similarly worded FDCA.[8]

---

[8] *See Association des Éleveurs de Canards et d'Oies du Québec v. Becerra*, 870 F.3d 1140, 1150 (9th Cir. 2017); *Nat'l Broiler Council v.*

17

The existence of these lawsuits—which are inexplicable under the government's theory—is no mystery. They are straightforward applications of the general rule that "if an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Armstrong*, 575 U.S. at 326. Moreover, they are consistent with other statements by the U.S. Supreme Court that similar language in the FDCA does not "preclude private parties from availing themselves of a well-established federal remedy." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 120 (2014) That is what UPSIDE has done, and its preemption claims are properly before this Court.

Once again, *Murphy* is instructive. As the Court explained, Defendants' error stems from "the language used by Congress in

---

*Voss*, 44 F.3d 740, 743 (9th Cir. 1994); *Del Real, LLC v. Harris*, 966 F. Supp. 2d 1047 (E.D. Cal. 2013), *aff'd*, 636 F. App'x 956, 957 (9th Cir. 2016); *see also, e.g., Monster Beverage Corp. v. Herrera*, No. 13-cv-786, 2013 WL 4573959 (C.D. Cal. Aug. 22, 2013) (denying motion to dismiss federal preemption claim under the FDCA brought by private litigant); *N.Y. State Rest. Ass'n v. N.Y.C. Bd. of Health*, 509 F. Supp. 2d 351 (S.D.N.Y. 2007) (holding that New York City regulation requiring restaurants to disclose calorie information on menu boards was preempted by the FDCA in suit brought by private litigant s).

framing preemption provisions." 584 U.S. at 478. Though the language of an express preemption like § 467e "might appear to operate directly on the States," "it is a mistake to be confused by the way in which a preemption provision is phrased." *Id.* As noted above, the PPIA's preemption provision "confers on private entities . . . a federal right to engage in certain conduct subject only to certain (federal) constraints." *Id.* at 478–79. A state that enacts a law that is expressly preempted by the PPIA violates regulated parties' rights, and that law is void under the Supremacy Clause. But that enactment is not a statutory "violation" of the type described in 21 U.S.C. § 467c because states are not regulated entities under the PPIA. And none of the cases that the government cites suggests otherwise. Instead, all of them involve lawsuits that involved—or were alleged to involve—duties as a regulated entity under the PPIA.[9] The same is true for the caselaw the

---

[9] *See Webb v. Trader Joe's Co.*, 418 F. Supp. 3d 524, 530 (S.D. Cal. 2019), *aff'd*, 999 F.3d 1196 (9th Cir. 2021) (dismissing consumer class action against Trader Joe's that alleged the grocery store sold chicken that retained more water than claimed on its USDA approved label); *Sanderson Farms, Inc. v. Tyson Foods, Inc.*, 549 F. Supp. 2d 708, 719 (D. Md. 2008) (stating in dicta, in a lawsuit against Tyson Foods, that plaintiffs "may not use the Lanham Act as a disguised attempt to enforce the PPIA"); *House of Raeford Farms, Inc. v. SOMMA Food Grp., LLC*, No. 05-22-01231-CV, 2024 WL 396609, at *4 (Tex. App. Feb. 2,

government cites interpreting similar statutory language under the
Food, Drug, and Cosmetic Act.[10]

None of the cases the government cites involves, let alone
forecloses, a claim like the one here—that a state has enacted a law
that is expressly preempted by the PPIA or the FDCA.[11] UPSIDE is not
suing a competitor, alleging that it has failed to abide by the
requirements of the PPIA. Nor is it suing a state, arguing that there
was some action the state was required to take under the PPIA.
Instead, it is suing to enjoin the threatened enforcement of a state law
that violates the Supremacy Clause. And federal courts have repeatedly
heard such cases under both the PPIA and the similarly worded
FDCA.[12] The government's argument suggests that all these cases were

---

2024) (holding that chicken supplies duties under the PPIA could not
serve as the basis for a state tort lawsuit).

[10] Indeed, the one case the government cites for this proposition
specifically held that the FDCA did *not* preempt federal claims brought
under the Lanham Act. *See POM Wonderful LLC v. Coca-Cola Co.*, 573
U.S. 102, 114 (2014).

[11] The government cites three cases decided under the FDCA in which
plaintiffs were held to have no cause of action against state actors
under the FDCA. But none of these were preemption cases. Instead, all
involved the alleged failure of the government to take affirmative acts
allegedly required under the FDCA.

[12] *See Association des Éleveurs de Canards et d'Oies du Québec v.*

20

decided in error. This Court should not adopt that implausible interpretation of the PPIA.

### 3. The PPIA applies to UPSIDE's cultivated chicken product.

Finally, the government attempts to evade the PPIA entirely by arguing that UPSIDE's cultivated chicken product, which is made almost entirely of chicken cells, is not a "poultry product" within the meaning of the PPIA. State Attorneys' Br. at 46–53; Simpson Br. at 22–25.

The district court rejected that argument below, and for good reason. The federal definition of "poultry product" is broad. It includes not just "any poultry carcass, or part thereof," but also "any product which is made wholly *or in part* from any poultry carcass *or part*

---

*Becerra*, 870 F.3d 1140, 1150 (9th Cir. 2017); *Nat'l Broiler Council v. Voss*, 44 F.3d 740, 743 (9th Cir. 1994); *Del Real, LLC v. Harris*, 966 F. Supp. 2d 1047 (E.D. Cal. 2013), *aff'd*, 636 F. App'x 956, 957 (9th Cir. 2016); *see also, e.g., Monster Beverage Corp. v. Herrera*, No. 13-cv-786, 2013 WL 4573959 (C.D. Cal. Aug. 22, 2013) (denying motion to dismiss federal preemption claim under the FDCA brought by private litigant); *N.Y. State Rest. Ass'n v. N.Y.C. Bd. of Health*, 509 F. Supp. 2d 351 (S.D.N.Y. 2007) (holding that New York City regulation requiring restaurants to disclose calorie information on menu boards was preempted by the FDCA in suit brought by private litigants).

*thereof.*" 21 U.S.C. § 453(f) (emphasis added). Thus, if any part of a food product is made from any part of a poultry carcass, that product is presumptively a "poultry product."

Products are excepted from this broad definition only if they meet two conditions, neither of which applies to UPSIDE's cultivated poultry product. First, the product must "contain poultry ingredients only in a relatively small proportion or historically have not been considered by consumers as products of the poultry food industry." *Id.* Second, such products must also be "exempted by the [United States] Secretary [of Agriculture] . . . under such conditions as the Secretary may prescribe." *Id.* As a result, even products that "contain poultry ingredients only in a relatively small proportion" are still "poultry products" under the PPIA unless they have also been exempted by the U.S. Secretary of Agriculture.

UPSIDE's product easily falls within this broad definition. The government does not dispute that the cells from which UPSIDE's product is produced were initially extracted from a poultry carcass.[13]

---

[13] Commissioner Simpson's suggests that whether UPSIDE "extracted an initial cell from a carcass" is a "fact absent from the pleadings or briefing." Simpson Br. at 23. That is incorrect. That fact was the subject

UPSIDE made the cultivated cells that make up the bulk of its product from those initially extracted cells. Thus, UPSIDE's product is a "poultry product."

The government resists this conclusion, making two arguments, neither of which succeeds.

First, the government argues that "[t]o be 'made from' part of a poultry carcass under the PPIA, the product must, in fact, contain part of the carcass." State Attorneys' Br. at 47. But the government's bare citation to the dictionary definition of the word "made"—not the statutory phrase "made from"—does not support this conclusion. And it is easily refuted. Any aficionado of bourbon whiskey can tell you that, by federal law, it must be made from corn. *See* 27 C.F.R. § 5.143(a), (c) & Table 1 (establishing that, to be called "bourbon," a distiller must "*make* the whisky" "*from* a fermented mash" composed of 51% corn (emphasis added)). Yet no native English speaker would ever describe bourbon as "containing" corn or any part of the corn plant.

---

of discovery below, was discussed in the briefing below, and ultimately led the court below to conclude that "without dispute, Plaintiff produces its cultivated chicken meat by taking chicken cells harvested from a slaughtered chicken—i.e., parts of a 'poultry carcass.'" Doc. 40 at 14.

23

The government's second argument is that chicken cells are not a "part" of a chicken because they're not an "appreciable" part, a modifier that exists nowhere in the statute. State Attorneys' Br. at 51. But this argument, too, is easily refuted by looking at products that the U.S. Secretary of Agriculture has exempted from the definition of "poultry products" because they contain "poultry ingredients only in a relatively small proportion." One such product is chicken broth. 9 C.F.R. § 381.15(c). If chicken cells are not "part" of a chicken, what "part" of the chicken carcass does a clarified chicken broth contain?[14]

In short, the district court correctly held that the PPIA's intentionally broad language encompasses cultivated products like UPSIDE's.

*      *      *

---

[14] Perhaps the government would argue that the broth was "made from" an appreciable part of a chicken while it simmered, but that argument cannot be reconciled with the government's view that to be "made from" a part of a chicken carcass, a finished poultry product "must in fact contain *part* of the carcass," State Attorneys' Br. at 48 (emphasis added). That is obviously not true of stock or broth.

24

For these reasons, UPSIDE has shown that it is likely to succeed on the merits of its federal preemption claims. The district court's contrary ruling was error and this Court should reverse.[15]

## II. This Appeal Continues to Present a Live Controversy.

In denying UPSIDE's motion for preliminary injunction, the District Court advised that "[t]o the extent Plaintiff is seeking to pursue its express preemption claims via an action in equity, it would be wise to amend its complaint to make this plain." Doc. 40 at 13 n.6. That suggestion formed no actual part of the reasoning below, because the district court concluded, erroneously, that UPSIDE's preemption claims failed for the same reason regardless of whether UPSIDE's claim is better understood as arising under Section 1983 or under the court's inherent equitable power. Still, following the court's suggestion, UPSIDE duly amended its complaint to add two additional claims, restating its original preemption claims almost verbatim, but explicitly

---

[15] As UPSIDE explained in its opening brief, UPSIDE has also shown that it meets the other factors for a preliminary injunction. To the extent this Court believes that there is any dispute on that matter, however, it would be appropriate for this Court to remand and have the district court address the other preliminary-injunction factors in the first instance.

25

invoking the inherent equitable power of the court to enjoin state action that violates the Supremacy Clause.

The government now argues that these amendments divest this Court of jurisdiction over this appeal. In the government's view, once UPSIDE filed its amended complaint, the original complaint became a "legal nullity," and any appeal arising out of relief related to it is necessarily moot. State Attorneys' Br. at 29; Simpson Br. at 15–16.

The government's brightline formalism cannot be squared with this Circuit's precedent. In *Johnson v. 3M Co.*, this Court held that it had jurisdiction over an interlocutory appeal of an immunity order despite an intervening amendment to the complaint because the "key point" was that the amended complaint did not change the allegations on which the immunity defense was based, "leav[ing] the status of th[e] appeal of the immunity order unaffected" 55 F.4th 1304, 1309 (11th Cir. 2022).

This Circuit is not alone in taking a commonsense approach to evaluating whether a revised pleading moots an interlocutory appeal. Just last year, the Second Circuit held unequivocally that "whether a revised pleading renders an appeal moot turns on whether that

26

pleading materially changes the substantive basis for the appeal." *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 78 (2d Cir. 2024). The Seventh Circuit, too, has refused to dismiss an interlocutory appeal as moot where the "new pleadings did no more than to add" a party and "had no effect on [the plaintiff's] basic grievance." *Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*, 928 F.3d 670, 674–75 (7th Cir. 2019).

To be sure, the Fifth Circuit does appear to have adopted the formalistic approach that the government urges here. *See New Orleans Ass'n of Cemetery Tour Guides & Cos. v. New Orleans Archdiocesan Cemeteries*, 56 F.4th 1026 (5th Cir. 2023). But that inflexible approach is inconsistent with the basic purpose of the Federal Rules of Civil Procedure, which is "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. The rules accomplish that, among other ways, by providing that "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e).

Here, the government's empty formalism would do nothing but waste the parties' and the Court's resources. The government would have this Court dismiss this appeal so that UPSIDE can file a second,

27

identical motion for preliminary injunction, appeal from the denial of that motion, and complete a second round of appellate briefing

Nothing in the Federal Rules requires that. This Court should instead follow the commonsense approach set forth in cases like *3M Co.*. UPSIDE amended its complaint out of an abundance of caution, to assure the district court of its intent to invoke the court's inherent equitable power to enjoin unconstitutional state action. But that amendment in no way changed UPSIDE's basic grievance: that it is unlawfully subject to a state law that is preempted by the PPIA. That pure legal issue is squarely presented here, and there is nothing to be gained by dismissing this appeal and forcing UPSIDE to file a second motion for preliminary injunction while the ongoing irreparable harm UPSIDE is facing continues to mount.

## CONCLUSION

This Court should reverse the decision below.

28

Dated: May 7, 2025.

Respectfully submitted,

INSTITUTE FOR JUSTICE

/s/ Paul M. Sherman
Paul M. Sherman (VA 73410)
Suranjan Sen (TN 038830)
Samuel B. Gedge (VA 80387)
901 North Glebe Road, Suite 900
Arlington, VA 22203-1854
(703) 682-9320 (Telephone)
(703) 682-9321 (Facsimile)
Email: psherman@ij.org; ssen@ij.org;
        sgedge@ij.org

Ari Bargil (FL 71454)
INSTITUTE FOR JUSTICE
2 South Biscayne Boulevard, Suite 3180
(305) 721-1600 (Telephone)
(305) 721-1601 (Facsimile)
Email: abargil@ij.org

*Counsel for Plaintiff/Appellant*

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because the brief contains <u>5,791</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4.

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated May 7, 2025.

<u>/s/ Paul M. Sherman</u>
*Counsel for Plaintiff/Appellant*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2025, I caused the foregoing *REPLY BRIEF OF APPELLANT* to be filed electronically with the Clerk of Court using the CM/ECF system, which will send notice and provide service of such filing on all counsel of record.

/s/ Paul M. Sherman
*Counsel for Plaintiff/Appellant*